CT Corporation

**Service of Process Transmittal**
06/24/2020
CT Log Number 537837463

TO: WENDY SCHLIES
Godfrey & Kahn, S.C.
200 S WASHINGTON ST STE 100
GREEN BAY, WI 54301-4298

RE: **Process Served in Louisiana**

FOR: LEI, Inc.  (Domestic State: LA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | LAWRENCE FANNALY, III, Pltf. vs. LEI, Inc., etc., Dft. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 202003954 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Baton Rouge, LA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/24/2020 at 09:15 |
| **JURISDICTION SERVED :** | Louisiana |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780102587885<br><br>Image SOP<br><br>Email Notification,  Melanie Bosar  mbosar@wernerelectric.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604 |
| **For Questions:** | 866-469-1620<br>CentralTeam4@wolterskluwer.com |

**EXHIBIT A**

Page 1 of  1 / ZB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

ATTORNEY'S NAME:  Demmons, Larry E 24376

AND ADDRESS:  3300 West Esplanade Avenue, Suite 601 , Metairie, LA 70002

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

| NO: 2020-03954 | DIVISION: J | SECTION: 15 |
|---|---|---|

### FANNALY, LAWRENCE III

**Versus**

### LEI, INC. F/K/A LAMP RECYCLERS OF LOUISIANA, INC.

### CITATION

TO:  LEI, INC. F/K/A LAMP RECYCLERS OF LOUISIANA, INC.

THROUGH:  CT CORPORATION SYSTEM

3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

PETITION FOR UNPAID WAGES, PENALTIES AND ATTORNEY'S FEES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA June 5, 2020**

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

**CHELSEY RICHARD NAPOLEON, Clerk of The Civil District Court for the Parish of Orleans State of LA**
by _Sondra Lewis_
Sondra Lewis, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| PETITION FOR UNPAID WAGES, PENALTIES AND ATTORNEY'S FEES | PETITION FOR UNPAID WAGES, PENALTIES AND ATTORNEY'S FEES |
| ON LEI, INC. F/K/A LAMP RECYCLERS OF LOUISIANA, INC. | ON LEI, INC. F/K/A LAMP RECYCLERS OF LOUISIANA, INC. |
| THROUGH: CT CORPORATION SYSTEM | THROUGH: CT CORPORATION SYSTEM |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said LEI, INC. F/K/A LAMP RECYCLERS OF LOUISIANA, INC. being absent from the domicile at time of said service. |
| _____ No. _____ | |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / _____ | _____ No. _____ |
| PAPER          RETURN | Deputy Sheriff of _____ |
| _____ / _____ / _____ | |
| SERIAL NO.     DEPUTY     PARISH | |

CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

FILED

2020 MAY 21 AM 10: 47

CIVIL
DISTRICT COURT

NO. 2020- D3954

DIVISION "J" 15

LAWRENCE FANNALY, III

VERSUS

LEI, Inc., f/k/a
LAMP RECYCLERS OF LOUISIANA, INC.

FILED:_____

_____
DEPUTY CLERK

## PETITION FOR UNPAID WAGES, PENALTIES AND ATTORNEY'S FEES

NOW INTO COURT, through undersigned counsel, comes Plaintiff, **LAWRENCE FANNALY, III**, and files the following Petition for Wages, Penalties and Attorney's Fees pursuant to La. R.S. 23:631:

### I.  PARTIES

1.

Plaintiff, **LAWRENCE FANNALY, III**, is an individual of the age of majority and a resident of Tangipahoa Parish, State of Louisiana.

2.

Made defendant herein is **LEI, Inc., f/k/a LAMP RECYCLERS OF LOUISIANA, INC.**, who is a Louisiana corporation with its principle office address listed as 11441 Fontana Lane, Independence, Louisiana 70443.

### II.  VENUE

3.

Venue is proper in this Court pursuant to La. R.S. 23:639, as some of the work performed by Mr. Fannaly for which compensation is owed was performed in Orleans Parish.

III.   **FACTS**

4.

Mr. Fannaly initially began his employment with Defendant in 1999, and worked for Defendant until around March 2005, when he voluntarily left to take a sales position at a larger company.

5.

On February 10, 2009, Mr. Fannaly was offered the position of Vice-President of Sales & Operations by Defendant via an offer letter from Lynn MacDonald.

6.

The terms of the offer letter included a $70,000 annual salary, bonus compensation based on net income of the company and a deferred compensation/phantom stock plan that was to provide additional compensation to Mr. Fannaly based on his work to increase the value of LEI.

7.

Because the annual salary was a significant pay cut to Mr. Fannaly compared to his sales position at the larger firm where he had been the salesperson of the year the prior two years, Mr. Fannaly relied on the bonus and phantom stock plan as the primary components of his compensation.

8.

Mr. Fannaly resumed his employment with Defendant on March 9, 2009.

9.

On August 21, 2011, Mr. Fannaly and Defendant entered into a formal Employment Agreement setting forth the terms and conditions of Mr. Fannaly's employment as Vice President of Sales and Operations, which largely mirrored the terms set forth in the offer letter previously provided to him with respect to compensation.

10.

According to the Employment Agreement, Mr. Fannaly was paid an annual, base salary of $70,000 per year.

11.

The Employment Agreement also provided that Mr. Fannaly would be paid a performance bonus (starting at 10% of net income beginning in 2009 and increasing to 15% of

2

net income in 2014) which would be calculated on a year to date basis after the end of each quarter.

12.

Finally, on the same day he signed his Employment Agreement, Mr. Fannaly also signed a "Phantom Stock Appreciation Plan" ( "PSAP"), which provided an opportunity for Mr. Fannaly to earn additional compensation.

13.

Again, because the annual salary Mr. Fannaly accepted was significantly lower than the market rate for someone in his position, Mr. Fannaly agreed to employment with Defendant in reliance on the compensation promised to him in the form of the performance bonus and PSAP.

14.

Mr. Fannaly was told that the PSAP was another means by which he could earn compensation based on his performance and the performance of the company.

15.

The growth of Mr. Fannaly's compensation pursuant to the PSAP was counted as a monthly expense by the Defendant and was counted against Mr. Fannaly's quarterly profit bonus. In essence, Mr. Fannaly funded close to 15% of his PSAP by bonuses not paid to him.

16.

The Defendant also withheld taxes on the PSAP and the annual increase of Mr. Fannaly's earned wages pursuant to the PSAP was reported as income on Mr. Fannaly's W-2 as "Medicare wages and tips"

17.

In 2017, Defendant's founder, Lynn MacDonald, fell ill and died later that year. After his passing, Defendant began to operate under the control of the Board of Trustees for the Lynn T. and Lindalee MacDonald Living Trust U/A/D January 21, 2008 (the "Board").

18.

Later that year, the Board hired an outside firm to market and sell the company. Throughout 2018, Mr. Fannaly worked with this firm and the board to facilitate the sale of LEI.

19.

Ultimately, in 2018, an agreement in principle was reached with a purchaser. Mr. Fannaly was advised of the agreement to sell the company on December 27, 2018. Mr. Fannaly then assisted with the purchase process for Defendant.

20.

The purchaser would not move forward with purchasing the Defendant if Mr. Fannaly would not remain as an executive and join the acquiring company.

21.

During the sale process, issues were raised that caused Defendant to spend a considerable amount on attorney's fees and other expenses.

22.

Moreover, unlike any time previously during Mr. Fannaly's tenure, the new Board of Directors became more and more active in decisions affecting the operation and profitability of the company.

23.

Those decisions, and the fees incurred by Defendant during the sale process, negatively impacted Defendant's profits and significantly reduced Mr. Fannaly's income (for the previous 5 years approximately 75% of Mr. Fannaly's income was based on company profitability).

24.

Given the significant reduction in Mr. Fannaly's income, Mr. Fannaly made the decision to resign from the company.

25.

On November 1, 2019, Mr. Fannaly provided 60 days' notice (which was required by the Employment Agreement) that he was resigning as Defendant's Vice President of Sales and Operations.

26.

Despite the fact that his resignation was effective immediately per the terms of his Employment Agreement, Mr. Fannaly agreed to continue to assist Defendant during the 60 day notice period, through December 31, 2019.

27.

On November 26, 2019, Mr. Fannaly was presented with a Separation Agreement and General Release, which sought to condition the payment of his earned wages under the PSAP on agreeing to a new non-competition agreement (as well as other requirements).

28.

Mr. Fannaly, on the advice of his counsel, refused to sign the Separation Agreement and General Release, which contained the new restrictive agreement, in order to obtain his earned wages.

29.

When Mr. Fannaly provided notice of his resignation on November 1, 2019, he also stated that he would be on vacation from December 20, 2019 through December 31, 2019 (which would be the end of the 60 day notice period). Even though Mr. Fannaly was on vacation during that time, however, he continued to provide services and support Defendant with software support and via email, through December 29, 2019.

30.

Regrettably, in a blatant and illegal attempt to forego paying Mr. Fannaly's earned wages, and in obvious retaliation for refusing to sign the Separation Agreement presented to him earlier, Defendant terminated Mr. Fannaly (allegedly "for cause") at 5:00p.m. on December 30, 2019.

### IV.  CAUSES OF ACTION

**A.    Violation of La. R.S. 23:631 *et. seq.***

1.    Earned Wages Pursuant to the PSAP

31.

According to the PSAP, Mr. Fannaly was entitled to earn additional compensation based on the growth of the value of the company. The value of the company was determined by using a percentage of Defendant's profits averaged and multiplied by five (5). This was additional compensation for the services Mr. Fannaly provided.

32.

The percentage of profits used in determining the payments to be made pursuant to the PSAP increased progressively from 3% in year 2009 to 15% in 2014 and remained 15% for each year thereafter.

33.

The compensation earned by Mr. Fannaly was not paid out each year, however, but rather was recorded as an expense on Defendant's books, reducing their taxable income (and Mr. Fannaly's profitability bonus), and credited to an account created for the benefit of Mr. Fannaly as compensation.

34.

Despite its name, Defendant's PSAP made it clear that the compensation provided to Mr. Fannaly was not stock, stating "[T]he Participant shall not acquire any share of Common Stock of the Company . . . ."

35.

According to the PSAP, the compensation earned by Mr. Fannaly was vested on the award date for each year: "[P]articipant shall be vested in the Phantom Stock Appreciation Percentage awarded to him immediately upon the Award Date applicable to such Plan Year." Thus, at the end of each year, Mr. Fannaly was automatically vested with the amounts earned by him and credited to him for that year.

36.

That the amounts credited to Mr. Fannaly's account pursuant to the PSAP were earned wages is further evidenced by the fact that Mr. Fannaly was required to pay taxes on the amount awarded to him each year.

37.

The compensation awarded to Mr. Fannaly pursuant to the PSAP was earned because the compensation was based on his services to Defendant, which contributed significantly to the profitability of Defendant.

38.

When Mr. Fannaly rejoined Defendant in 2009 the company was barely profitable and annual sales had declined. Mr. Fannaly grew annual sales every year during his tenure. Annual sales for 2019 are estimated to more than 650% than they were when Mr. Fannaly began his re-employment with Defendant in 2009.

39.

The compensation earned by Mr. Fannaly pursuant to the PSAP is "wages" within the meaning of La. R.S. 23:631 *et seq.*, as it was earned compensation for services rendered.

40.

According to the Employment Agreement, Mr. Fannaly's employment terminated automatically upon him providing notice of his resignation:

> Termination by Resignation. Subject to Section 3.2, below, **Employee's employment and the Company's obligations under this Agreement shall terminate automatically, effective upon Employee's provision of sixty (60) days' prior written notice to the Company of Employee's resignation from employment with the Company,** or at such other time as may be mutually agreed between the parties following the provision of such notice.

(emphasis added).

41.

Therefore, upon providing notice of his resignation on November 1, 2019, Mr. Fannaly was entitled to payment of the amount previously credited to his account under the PSAP, an amount believed to be $854,229, as well as any amounts that should have been credited to his account on December 31, 2019.

42.

Rather than paying the earned wages owed to Mr. Fannaly, however, Defendant refused payment, citing his alleged termination "for cause" on December 30, 2019 at 5:00p.m. – two (2) months after Mr. Fannaly had already resigned and mere hours before Mr. Fannaly would have been vested with an additional payment under the PSAP for 2019.

43.

Mr. Fannaly disputes and disagrees with Defendant's contention that he was terminated for cause.

44.

Moreover, putting aside the timing of Defendant's alleged termination for cause two months after Mr. Fannaly's resignation, Defendant's alleged termination for cause does not comply with the applicable provision of the PSAP, which requires an opportunity to cure any alleged cause for termination within thirty (30) days.

45.

The alleged issues Mr. Fannaly was terminated for were raised by Mr. Fannaly in March, 2019 on a conference call to discuss disclosures for the sale of the company.

46.

Despite the fact that those issues were raised in March, 2019, Defendant remained silent and did not give any notice that said issues were or could form the basis for a "cause" termination.  Instead, Defendant encouraged Mr. Fannaly to continue negotiations with the acquirer of Defendant and for Mr. Fannaly to be named the acting President of Defendant and the acquiring company.  Further, Defendant required Mr. Fannaly to sign as the responsible officer for its 10 year hazardous waste permit submitted to the Louisiana Department of Environmental Quality in December, 2019.

47.

As noted above, however, because the termination of Mr. Fannaly's employment occurred automatically on the day he provided 60 days' notice of his resignation (on November 1, 2019), Defendant's attempt to terminate Mr. Fannaly on December 30, 2019 was without effect.

48.

Finally, even if it were determined that Defendant did terminate Mr. Fannaly's employment (which is denied), the provisions contained in the PSAP purporting to allow forfeiture of Mr. Fannaly's right to his earned compensation in the event of termination "for cause" amount to an illegal wage forfeiture in violation of La. R.S. 23:634.

49.

Therefore, Mr. Fannaly is entitled to payment of all wages earned pursuant to Defendant's PSAP.

2.    Underpaid Bonuses Pursuant to Employment Agreement

50.

As noted above, as part of the compensation for services rendered, Mr. Fannaly was also entitled to a performance bonus each quarter of each calendar year.

51.

The bonus was to be equal to "ten percent (10%) of the net income of the Company" in calendar years 2011-2012 and increasing to fifteen (15%) of net income of the Company in 2014 and each year thereafter.

52.

In calendar year 2019, Defendant incurred extremely high legal and other expenses, which served to reduce the company's net profits (and thereby reduced Mr. Fannaly's performance bonus).

53.

While those extraordinary expenses were excluded from the calculation of performance bonuses for other employees, they were not excluded from the calculation of the performance bonus(es) owed to Mr. Fannaly. As a result, it is estimated that Mr. Fannaly's performance bonus for 2019 was improperly underpaid by an estimated $100,000 or more.

54.

The performance bonuses earned by Mr. Fannaly pursuant to the Employment Agreement were earned compensation based on his services to Defendant, which contributed to the profitability of Defendant.

55.

The compensation awarded to Mr. Fannaly pursuant to the performance bonuses constitutes "wages" within the meaning of La. R.S. 23:631 *et seq.*

56.

Defendant's refusal to pay Mr. Fannaly's earned wages is a violation of Louisiana's Wage Payment statute, La. R.S. 23:631, *et seq.*, entitling Mr. Fannaly to the payment of all amounts owed under the PSAP and as underpaid bonuses.

57.

Mr. Fannaly made demand for payment of his unpaid, earned wages pursuant to the PSAP, but Defendant refused to pay said wages absent the signing of the General Release agreement noted above – which contained restrictive covenants not previously agreed to by Mr. Fannaly.

58.

In addition, as a result of Defendant's refusal to pay Mr. Fannaly's earned wages after demand, Mr. Fannaly is entitled to penalty wages pursuant to La. R.S. 23:632.

59.

According to La. R.S. 23:632, Defendant is liable to Mr. Fannaly for the payment of 90 days of penalty wages at his daily rate of pay, in an amount to be determined at trial.

60.

Finally, La. R.S. 23:632 provides that in any successful claim, attorney's fees **shall** be awarded. Therefore, Mr. Fannaly is entitled to an award of attorney's fees as well, in an amount to be determined at trial.

61.

Pursuant to La. R.S. 23:631(B) and La. Code of Civ. Pro. Art. 2592, Mr. Fannaly is entitled to have his claim against Defendant heard *via* summary proceeding, and respectfully requests that this Honorable Court set a date and time for a contradictory hearing for Defendant to appear and show cause why Mr. Fannaly should not be entitled to all unpaid wages, penalties and attorneys fees as stated above pursuant to La. R.S. 23:631 *et seq*.

### B.     Breach of Contract

62.

Mr. Fannaly realleges and incorporates all of the factual allegations set forth in Paragraphs 4-61 as if copied herein *in extenso*.

63.

Alternatively, while Mr. Fannaly submits that the amounts owed to him (as set forth above) constitute wages pursuant to La. R.S. 23:631 *et seq*, in the event those amounts are not determined to be wages, Mr. Fannaly is entitled to recover those amounts via breach of contract.

64.

Mr. Fannaly and Defendant entered into a contractual agreement whereby, in exchange for Mr. Fannaly providing services to Defendant, Defendant would pay Mr. Fannaly the amounts set forth in the PSAP.

65.

Mr. Fannaly and Defendant also entered into an Employment Agreement whereby Defendant promised to pay Mr. Fannaly performance bonuses in exchange for services rendered.

66.

Mr. Fannaly complied with all terms and provisions of the PSAP and the Employment Agreement and rendered all services required by the PSAP and his Employment Agreement. Despite that, Defendant failed to pay all amounts owed pursuant to those contractual agreements.

67.

Defendant's failure to pay Mr. Fannaly the amounts earned pursuant to the PSAP and Employment Agreement is a breach of contract, entitling Mr. Fannaly to all sums contractually owed by those agreements.

**WHEREFORE,** Plaintiff, **LAWRENCE FANNALY, III,** prays that Defendant, **LEI, Inc., f/k/a LAMP RECYCLERS OF LOUISIANA, INC.,** be served with a copy of this Petition and duly cited to appear and answer same, that this matter be tried summarily in accordance with La. R.S. 23:631(B), that this Honorable Court set a date and time for a contradictory hearing for Defendants to appear and show cause why Mr. Fannaly should not be entitled to all unpaid wages, penalties and attorneys fees as stated above pursuant to La. R.S. 23:631 *et seq*, and alternatively pursuant to the contracts entered into by the parties.

Respectfully submitted,

**THE DEMMONS LAW FIRM, LLC**

**LARRY E. DEMMONS (#24376)**
3201 Ridgelake Drive
Metairie, Louisiana 70002
Telephone: (504)-296-6417
Facsimile: (504)-335-0749

**COUNSEL FOR PLAINTIFF, LAWRENCE FANNALY, III**

**PLEASE SERVE:**

**LEI, Inc., f/k/a LAMP RECYCLERS OF LOUISIANA, INC.**
through its registered agent:

CT CORPORATION SYSTEM
3867 Plaza Tower Drive
Baton Rouge, Louisiana 70816

**A TRUE COPY**

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

11

CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

FILED

2020 MAY 21  AM 10: 47

CIVIL
DISTRICT COURT

NO.                                                    DIVISION " "

LAWRENCE FANNALY, III

VERSUS

LEI, Inc., f/k/a
LAMP RECYCLERS OF LOUISIANA, INC.

FILED:_____

_____
DEPUTY CLERK

## RULE TO SHOW CAUSE

Considering the above and foregoing Petition and prayer for relief:

IT IS ORDERED BY THE COURT that Defendant, **LEI, Inc., f/k/a LAMP RECYCLERS OF LOUISIANA, INC.**, appear and show cause on the 10th day of _November_, 2020 at 9:00 o'clock a.m why Plaintiff, **LAWRENCE FANNALY, III**, should not be entitled to judgment on his claim for unpaid wages, penalties and attorney's fees pursuant to La. R.S. 23:631 *et seq*.

New Orleans, Louisiana this 3rd day of _June_____, 2020.

(Sgd.) D. Nicole Sheppard
Judge - Division "J"

_____
**JUDGE**

## PLEASE SERVE:

**LEI, Inc., f/k/a LAMP RECYCLERS OF LOUISIANA, INC.**
through its registered agent:

CT CORPORATION SYSTEM
3867 Plaza Tower Drive
Baton Rouge, Louisiana 70816

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

12